GWENDOLYN HODGES

*vs.*

THE SOUTH BERWICK WATER COMPANY and
SOUTH BERWICK WATER COMPANY, INC.

Somerset.    Opinion, June 2, 1942.

*Harvey D. Eaton,* for plaintiff.

*Cyrus N. Blanchard,*

*Bradley, Linnell, Nulty & Brown,* for defendants.

SITTING: STURGIS, C. J., THAXTER, HUDSON, MANSER, WORSTER, MURCHIE, JJ.

THAXTER, J.    This action of assumpsit was brought in the Superior Court against two corporations, The South Berwick Water Company and the South Berwick Water Company, Inc. The plea was the general issue. The writ contains two counts, the first an account annexed, the second an omnibus account under which the plaintiff specifies that she will offer proof of the items in the account annexed, also of a promissory note of South Berwick Water Company, Inc. dated July 1, 1937, for $2,800. and payable in one year with interest at 6%, also of another note of the same corporation dated November 28, 1938, for $1,000. payable on February 1st with interest at 5%, also of a check dated November 24, 1937, for $250. and a check dated November 26, 1938, for $942.50. The specifications do not allege by whom the checks were drawn. The exhibits, however, indicate that the plaintiff refers to two checks drawn by her to the order of Alvin B. Strout who seems to have been the president, principal and controlling stock owner, and manager of both of the defendant corporations.

A hearing was had before a single justice in vacation with right of exceptions reserved who ordered judgment against both companies in the amount of $13,773.77. From this ruling

the defendants have brought the case to this court on a bill of exceptions. These are based on the ground that such ruling is unsupported by evidence and that the principles of law relied upon by the court are erroneous.

The general contention of the plaintiff is as set forth in the bill of exceptions, that she advanced certain securities and money to the defendants as set forth in the account annexed, the securities having the value declared upon in that account.

The record shows that The South Berwick Water Company was organized under a special act of the legislature in 1893 to furnish water to the people of South Berwick. It was given, subject to the conditions set forth in its charter, the right to issue stock and bonds and to acquire property by eminent domain. Alvin B. Strout acquired the stock of this company on March 17, 1937 and became its president and general manager. Shortly thereafter he caused to be organized under the general law the South Berwick Water Company, Inc. This corporation came into being early in April, 1937. Its purpose was to furnish water to the people of South Berwick. As collateral and ancillary to such general purposes it was, as set forth in Par. 4 of its certificate, authorized to carry on all kinds of general business. April 5, 1937, the stockholders of The South Berwick Water Company voted, subject to the approval of the Public Utilities Commission, to sell all of its assets with the exception of its franchise to this new corporation, the consideration for said sale to be all of the capital stock of the new company "and such bonds and as many bonds as the Maine Public Utilities Commission will permit said South Berwick Water Company, Inc. to issue on the credit of the assets to be conveyed." On the same day the stockholders of South Berwick Water Company, Inc. voted to purchase such assets and to pay such consideration for the property to be transferred to it. By decree dated April 24, 1937, the Public Utilities Commission authorized such sale for the consideration of $5,000. of the capital stock of the South Berwick Water Company, Inc. and such bonds as might be authorized by the commis-

sion. In accordance with this decree the property was conveyed; the obligation to supply water was assumed by the new company; and thereafter The South Berwick Water Company did no further business.

Shortly after this transaction was completed the plaintiff comes into the picture. She was approached by Strout, a lifelong friend, who told her that he was interested in The South Berwick Water Company. At various times beginning June 30, 1937, and ending November 28, 1938, she turned over to him various securities and cash totalling according to her account annexed $14,773.77. It is admitted that there is a duplication of items amounting to $1,000. The judgment for $13,-773.77 ordered by the sitting justice apparently takes this error into consideration. These securities and cash were turned over to Strout personally and his receipts for them specify that they were "to be used as I see fit." There was nothing set up on the books of either company showing any obligation to the plaintiff. Strout testified that the money which he had received from the plaintiff and also from the sale of her securities totalling somewhere between $11,500. and $12,000. was used in improving the plant and facilities of the South Berwick Water Company, Inc. It seems to have been credited to his account on the books of the company. He testified that he agreed to give to Mrs. Hodges bonds or preferred stock of this company for what she had turned over to him. She says that she was to receive first mortgage bonds; but she does not seem to know by which company the securities were to be issued. She does not claim to have dealt with the companies as such but to have relied on Strout to do what was right under the circumstances. She had perfect confidence in him which seems to have been sadly misplaced.

Though the defendants have been sued as joint obligors, the claims against each appear altogether inconsistent. The liability of The South Berwick Water Company seems to be based on the assumption that it is still the owner of the property which it purported to transfer to the new corporation and

that it is indebted to the plaintiff for money advanced by her which went into extensions and improvements on this property. The argument is that the new company never had a legal existence in that it could not have been lawfully organized under the general law to carry on the business of a water company, and that even though it had a legal existence the transfer to it of the property of the old company was void. In spite of all this, the plaintiff claims that the new company is liable also, apparently not because of any direct liability but on the theory of an implied obligation based on the assumption that the value of its property, which the plaintiff but a moment before contended the new company did not own, has been enhanced in value by reason of extensions and improvements paid for with the plaintiff's money.

It is not an easy matter to evaluate these conflicting claims, but we regard it as important at least to determine the one against the original company which rests on the theory that the conveyance by the old company to the new was void.

The plaintiff's contention that the new company was never legally organized cannot be sustained. A corporation may be organized under the general law to carry on as a public utility within the State of Maine the business of supplying water for the use of the public. Rev. Stat. 1930, Ch. 56, Sec. 8, as amended by Pub. Laws 1937, Ch. 99, Sec. 1, provides for the organization of corporations under the general law. The provisions of this section apply to the organization of corporations "to carry on any lawful business anywhere. . . ." There then follows an enumeration of certain types of corporations to which the statute applies. The inclusion of such specific types does not, however, limit the general scope of the preceding language. Then are listed certain classes of corporations which are excepted from the provisions of the section; but water companies do not come within such excepted class. Then significantly there is an enumeration of certain classes which may be organized to do business when permissible by law without the

State of Maine. This list comprises certain kinds of public utilities but again there is no mention of water companies. The failure specifically to except water companies in the general exception clause coupled with the omission to include water companies in the provision applicable to other public utilities authorized to do business without the state is very cogent evidence that water companies were assumed to be included within the general provision authorizing the formation of corporations "to carry on any lawful business anywhere."

The plaintiff claims that the purposes of the South Berwick Water Company, Inc. as set forth in its certificate of organization are not confined to those necessary for the operation of a public utility but authorize the corporation to engage generally in all kinds of business. If this were the proper construction of the charter, we do not know that it is a matter of great moment, for no case has been cited from this jurisdiction which holds that such a combination of purposes is improper. Cf. *Brown* v. *Gerald*, 100 Me., 351, 61 A., 785, 70 L. R. A., 472. It is not, however, necessary to discuss this question, for as previously stated, the purposes set forth in Par. 4 of the certificate of organization are but collateral and ancillary to the main purpose to furnish water for the use of the public as set forth in Par. 1.

Aside from the question of whether the new corporation had a legal existence and could operate as a public utility, the plaintiff argues that the sale by the old company to the new company was void. As authority for this proposition counsel call to our attention the case of *Brunswick Gas Light Co.* v. *United Gas, Fuel & Light Co.*, 85 Me., 532, 27 A., 525, 35 Am. St. Rep., 385, which holds that a public service corporation such as was The South Berwick Water Company cannot without legislative authority sell or lease its corporate property and privileges and thereby disable itself from performing the duties which it owes to the public. It should be noted that in the case before us the sale of the corporate franchise is not involved,

but counsel are quite right in assuming that under the doctrine of the Brunswick case a public service corporation cannot without such authority lawfully sell all of its corporate property so as to disable itself from continuing in business. This case is well recognized law. Counsel, however, fail to consider that this case was decided before the passage of the statute establishing in this state a public utilities commission and that under that statute, Rev. Stat. 1930, Ch. 62, Sec. 44, as amended by Pub. Laws. 1935, Ch. 30, the right is expressly given to a public utility to make such a sale when "it shall have first secured from the commission an order authorizing it so to do." This was "legislative authority," as those words are used in the Brunswick case, granted on a condition which in this instance has been complied with. We therefore hold on the record now before us that the sale of its assets by The South Berwick Water Company to the South Berwick Water Company, Inc. was valid.

So far as this record shows there was, therefore, no liability on the part of The South Berwick Company to the plaintiff.

We do not regard it as necessary to express any opinion as to the liability of the South Berwick Water Company, Inc. The plaintiff in her pleadings claimed against the defendants on a joint liability; there was a joint plea of the general issue; the order of the court was for the entry of a joint judgment; and but one bill of exceptions filed by both defendants is before us. On the authority of *Day* v. *Scribner*, 127 Me., 187, 142 A., 727, under such circumstances as these, the bill of exceptions should be sustained if either defendant is aggrieved by the ruling of the court. The procedure adopted in *Plante* v. *Canadian Nat. Rys. et al*, 138 Me., 215, 23 A. (2d), 814, has no application to this case.

*Exceptions sustained.*